# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALI ASGHAR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.  06-0400 (RJL)** |
| | ) | |
| **HENRY M. PAULSON, JR.,**[1] | ) | |
| *Secretary, Department of the Treasury,* | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION
(September **24** 2008) [#20, 21]

Plaintiff Ali Asghar ("plaintiff" or "Asghar") brings this action against Defendant

Henry M. Paulson, Jr. ("defendant"), in his official capacity as Secretary of the Treasury,

alleging discrimination, creation of hostile work environment, and retaliation under Title

VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*  Now before the Court is

defendant's motion to dismiss, or alternatively, for summary judgment.  Upon review of

the pleadings, the entire record, and the applicable law, the Court GRANTS defendant's

motion.

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor.  Accordingly, the Court substitutes Henry M. Paulson, Jr. for John W. Snow.

## BACKGROUND[2]

Plaintiff has been employed by the Bureau of Engraving and Printing ("Bureau"), a division of the Department of the Treasury, since 1995. (Asghar Decl. [Dkt. #26-2] ¶ 3.) During his tenure, plaintiff has filed a bevy of EEO complaints.[3] (Compl. ¶ 8.) Indeed, the claims alleged in this action were the basis of an EEO complaint filed by Asghar on March 4, 2005. (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mot.") [Dkt. #20, 21], Attach. 2 (EEO complaint).) In that complaint and in this action, plaintiff, a Muslim male and native of Afghanistan, raises various discrimination claims, primarily arising from a security investigation related to his extended trip to Afghanistan in 2004.[4]

In June 2004, plaintiff requested leave without pay ("LWOP") from July 15, 2004 to December 31, 2004 to travel to Afghanistan for "family matters." (Def.'s Mot., Attach. 6 (request for leave); Def.'s Stmt. [Dkt. #20] ¶ 5.) This request was approved by Antoine Johnson, one of Asghar's supervisors. (Def.'s Stmt. ¶ 5.) Asghar told another supervisor, Felicia Jackson ("Jackson"), that he needed to travel to Afghanistan because his mother was ill.[5] (Id. ¶ 6; Pl.'s Stmt. [Dkt. #27] ¶ 6.) When Jackson discovered that

---

[2]     The facts set forth in the background section are drawn primarily from the plaintiff's complaint, defendant's statement of facts (Def.'s Stmt. [Dkt. # 20]), plaintiff's response to defendant's statement of facts (Pl.'s Stmt. [Dkt. #27]), and the factual representations in plaintiff's declaration (Asghar Decl. [Dkt. #26-2]) that were incorporated in his opposition to defendant's motion. While there are several issues of fact in dispute – as noted below – none of these disputes are material to the determination of defendant's motion.

[3]     Plaintiff's first EEO action occurred between 1996 and 1998, and the second EEO action occurred between 1999 and 2000. (Compl. ¶ 8.) The last of these matters was settled in February 2002. (Pl.'s Stmt. ¶ 1.)

[4]     Plaintiff traveled to Afghanistan twice during 2004. (Def.'s Stmt. ¶ 3.) Only the events surrounding plaintiff's second trip are central to this dispute.

[5]     While plaintiff agrees that he told Jackson that his step-mother (whom he refers to as his mother) was ill, he maintains that he also told Jackson he was traveling to Afghanistan for "family matters." (Pl.'s

plaintiff had given "varying reasons" for his leave request, she notified her supervisor, James Brent ("Brent"), about Asghar's travel. (Def.'s Stmt. ¶ 7.)  Pursuant to the Bureau's policy that supervisors report extended foreign travel by Bureau employees to the Office of Security, Brent notified that office about Asghar's foreign travel.  (*Id.* ¶ 8.)

Glen Alonso ("Alonso") of the Office of Security was assigned to look further into Asghar's trip to Afghanistan.  (*Id.* ¶ 10.)  After learning from Brent that Asghar attributed his need to travel to his mother's health, Alonso reviewed Asghar's security folder and discovered that Asghar's mother was deceased.  (*Id.* ¶¶ 9-11.)  Because of this discrepancy and the fact that Asghar was traveling to a country in which the United States is engaged in armed conflict,[6] Alonso became suspicious and decided that a further investigation into the matter was warranted.  (*Id.* ¶ 12; Def.'s Mot., Attach. 8 (Alonso Dep.) at 12-18, 49.)  Accordingly, he decided to "redline" Asghar's entry badge and deprive him access to the agency until this issue was resolved.  (*Id.* at 24-29.)

Consequently, when Asghar returned to the Bureau on November 8, 2004, several weeks before the end of his LWOP period, he was denied entry into the building.[7] (Def.'s Stmt. ¶ 14; Pl.'s Stmt. ¶ 14; Asghar Decl. ¶¶ 15-16.)  Alonso then met Asghar at the entrance of the building and escorted him to the Office of Security for an interview. (Def.'s Stmt. ¶ 15.)  Alonso informed Asghar that "the interview was based upon his

---

Stmt. ¶ 6.)

[6]     The United States commenced military operations in Afghanistan shortly after Congress passed the Authorization for Use of Military Force, Pub. L. 107-40, §§ 1-2, 115 Stat. 224 (Sept. 18, 2001).

[7]     Asghar had returned to the Bureau on a prior occasion in late October 2004 and was not denied access to the building at that time. (Pl.'s Stmt. ¶ 14.) Alonso testified that "something went wrong" and Asghar's badge had not been properly redlined; Alonso subsequently ensured that Asghar's badge was redlined. (*See* Alonso Dep. at 19, 24.)

recent travels abroad, and it was intended to discern whether he had any contacts or propositions requesting favors or entry into the U.S. while he was in Afghanistan." (*Id.* ¶ 16.) At the conclusion of the interview, Alonso informed Asghar that he may be contacted by the FBI about his travel and that he should remain at home until further notice. (*Id.* ¶ 18; Pl.'s Stmt. ¶ 15.) On November 23, 2004, FBI agents visited Asghar's home and conducted a 45-minute interview. (Def.'s Stmt. ¶ 19.) Three days later, on November 26, 2004, Asghar was cleared to return to work and did so on November 29, 2004. (*Id.* ¶¶ 20, 21.)

Plaintiff contends that the security investigation was a discriminatory action, undertaken because of his race, color, national origin, and religion and made in retaliation for previous EEO actions.[8] (Compl. at 5.) Plaintiff additionally alleges that the security investigation, along with several other incidents,[9] created a hostile work environment. (*Id.*)

## LEGAL STANDARD

Defendant moves to dismiss for failure to state a claim or, in the alternative, for summary judgment. Because both parties have presented materials outside the pleadings – which the Court relies upon in evaluating plaintiff's claims – the Court will decide the motion in accordance with Federal Rule of Civil Procedure 56, rather than as a motion to

---

[8]     Plaintiff's discrimination claims based on religion were not raised in his complaint, but were alleged in his EEO complaint, (Def.'s Mot., Attach. 2), and were addressed by both defendant and plaintiff in the pleadings currently before the Court, (*see generally* Def.'s Mot.; Pl.'s Opp'n; Def.'s Reply). To the extent that these claims are properly before the Court, summary judgment for defendant is appropriate because plaintiff does not establish a claim for discrimination on *any* other basis, including religion.

[9]     These incidents are described in further detail at *infra* pages 12-13.

4

dismiss. *See* Fed. R. Civ. P. 12(d) ("If, on a motion [for judgment on the pleadings],

matters outside the pleadings are presented to and not excluded by the court, the motion

must be treated as one for summary judgment under Rule 56."); *see also Brug v. Nat'l*

*Coalition for the Homeless*, 45 F. Supp. 2d 33, 36 n.3 (D.D.C. 1999) (treating defendant's

motion as one for summary judgment where both parties presented materials outside the

pleadings).

Under Rule 56, summary judgment is appropriate when the pleadings and the

record demonstrate that "there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."[10] Fed. R. Civ. P. 56(c).  The party

seeking summary judgment bears the initial burden of demonstrating the absence of a

genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In

considering whether there is a triable issue of fact, the Court must draw all reasonable

inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 255 (1986).  The party opposing a motion for summary judgment, however, "may

not rely merely on allegations or denials in its own pleading; [but] . . . must . . . set out

specific facts showing a genuine issue for trial."[11] Fed. R. Civ. P. 56(e).

---

[10]     Material facts are those that "might affect the outcome of the suit under the governing law."
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[11]     The non-moving party must do more than simply "show that there is some metaphysical doubt as
to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
Moreover, any factual assertions in the movant's affidavits will be accepted as true unless the opposing
party submits his own affidavits or other documentary evidence contradicting the assertion. *Neal v. Kelly,*
963 F.2d 453, 456 (D.C. Cir. 1992).

## ANALYSIS

### I. Discrimination and Retaliation Claims

Plaintiff alleges that he was subjected to the above-referenced security investigation because of his race, color, national origin, and religion and in retaliation for previous EEO actions. In Title VII disparate-treatment and retaliation suits,[12] "the plaintiff may prove his claim with direct evidence, and absent direct evidence, he may indirectly prove discrimination by establishing a *prima facie* case under the burden-shifting framework established in *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792, 802 (1973)]." *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 665 (D.D.C. 1997); *see also Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999) (finding that the *McDonnell Douglas* burden-shifting framework governs claims of retaliation). Under the *McDonnell Douglas* framework, (1) the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination; (2) the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its actions; and (3) the plaintiff must then prove by a preponderance of the evidence that the employer's stated reasons were in reality a pretext for discrimination. *See Stella v.*

---

[12]     Title VII of the Civil Rights Act provides that it is unlawful for an employer, including a federal agency, *see George v. Leavitt,* 407 F.3d 405, 410-11, 417 (D.C. Cir. 2005) (citing 42 U.S.C. § 2000e-16(a)), to, *inter alia,* "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In addition, the Title VII anti-retaliation provision prohibits "discrimination" against an employee who engages in a protected activity. *See* Larson, 1-34 Employment Discrimination § 34.04; *see also* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this [title], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title].")

*Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002) (citing, among other authorities, *McDonnell Douglas*, 411 U.S. at 802-04).

The D.C. Circuit has recently clarified the *McDonnell Douglas* analysis for disparate-treatment claims "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision."[13] *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). In such cases, a court need not – *and should not* – determine whether the plaintiff has produced sufficient evidence to support an inference of discrimination. *Id.* Instead, it should proceed directly to the third step of the *McDonnell Douglas* framework and determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin." *Id.* (citations omitted).

In this case, plaintiff suffered an adverse employment action – namely, being unable to return to work until the completion of the security investigation.[14] (Pl.'s Opp'n

---

[13]     Although *Brady* was decided in the context of a Title VII disparate-treatment action, the analysis is equally applicable to retaliation suits under Title VII. *See Laurent v. Bureau of Rehabilitation, Inc.*, 544 F. Supp. 2d 17, 22 n.3 (D.D.C. 2008) (finding that examination of plaintiff's *prima facie* case of retaliation was irrelevant where defendant articulated a legitimate, non-discriminatory reason for the adverse employment action); *see also Bergman v. Paulson*, 555 F. Supp. 2d 25, 35 (D.D.C. 2008) (applying *Brady* analysis to a retaliation claim); *Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d. 210, 216 (D.D.C. 2008) (finding that the "same principle" articulated in *Brady* applies to a Title VII retaliation suit and declining to decide if the plaintiff "actually made out a *prima facie* case of retaliation").

[14]     Defendant argues that plaintiff did not suffer an adverse employment action because he had no intention of returning to work before the end of his LWOP period and thus "did not anticipate receiving his salary during that time period." (Def.'s Reply at 9-10.) An actionable adverse employment action occurs only when an employee experiences a "significant change in employment status" which results in an "objectively tangible harm." *See Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Brown v. Brody*, 199 F.3d 446, 456

at 15-16.)  The Bureau has also articulated a legitimate, non-discriminatory reason for

this action – namely, that the investigation was warranted because of security concerns.

(Def.'s Mot. at 22; Def.'s Reply at 4-7.)  Consequently, the sole remaining question

under *Brady* is whether "a reasonable jury could conclude from all of the evidence that

the adverse employment decision was made for a discriminatory [or retaliatory] reason."

*Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing *Aka v. Washington Hosp.*

*Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998)).  While a Title VII plaintiff "may try in

multiple ways to show that the employer's stated reason for the employment action was

not the actual reason (in other words, was a pretext)," in this case, plaintiff "attempt[s] to

demonstrate that [his] employer [was] making up or lying about the underlying facts that

formed the predicate for the employment decision." *Brady*, 520 F.3d at 495.  Plaintiff's

contentions, however, are simply not supported by the evidence.  How so?

        To support his claim that the Bureau was motivated by discriminatory intent,

plaintiff alleges that Bureau employees lied about the underlying reasons for reporting his

foreign travel to the Office of Security.  Specifically, plaintiff claims that "[t]here were

---

(D.C. Cir. 1999) ("A tangible employment action constitutes a significant change in employment status,
such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a
decision causing a significant change in benefits.")  In this case, Asghar contends that he suffered an
"adverse employment action" when the Bureau prevented him from returning to work until the security
investigation was completed. (Pl.'s Opp'n at 16.)  Plaintiff contends this resulted in a loss of pay during
that period because he remained on LWOP status.  (*Id.*)  Although defendant disputes whether plaintiff
intended to return to work before the end of his LWOP period on December 31, 2004, (Def.'s Stmt. ¶ 4),
plaintiff did in fact return to work before the year end, (*see* Def.'s Stmt. ¶ 20-22 (Asghar returned to work
on November 29, 2004 after he was cleared to do so)).  Drawing all reasonable inferences in the non-
moving party's favor, the Court finds that Asghar intended to return to work before the end of his LWOP
period.  Because he was unable to do so until the completion of the investigation, this essentially
amounted to an unpaid suspension, which constitutes an adverse employment action under Title VII. *See*
*Greer v. Paulson*, 505 F.3d 1306, 1318 (D.C. Cir. 2002) (finding that "a suspension without pay" could
amount to an adverse employment action); *see also Santa Cruz v. Snow*, 402 F. Supp. 2d 113, 124
(D.D.C. 2005).

no discrepancies in the reasons for his travel" because he never told Jackson his mother was critically ill. (Pl.'s Opp'n at 16.) Instead, plaintiff alleges that the real reason his supervisors reported his travel to the Office of Security was "because of his race" and because "a supervisor was biased against Islam and believed it was a violent religion."[15] (Pl.'s Opp'n at 11-12.) These allegations, however, are insufficient to defeat defendant's motion for summary judgment. First, Asghar's assertion that he never told co-workers that he was traveling to Afghanistan because his mother was ill is not supported by the record. (*See* Def.'s Mot., Attach. 4 (June 16, 2005 Asghar Aff.), p. 64 (earlier sworn affidavit of Asghar stating that he told Jackson he needed to travel to Afghanistan because his "mother was ill"); *see also* Def.'s Stmt ¶¶ 7, 9-10 (citing testimony of several Bureau employees who were told by Asghar that he needed to travel to Afghanistan because of his sick mother).) Moreover, irregardless of the reasons why Jackson initially reported Asghar's travel to Brent, her supervisor, defendant has established that it was Bureau policy to report such travel to the Office of Security and that Brent acted pursuant to this policy. (*See* Def.'s Stmt. ¶ 8.) Plaintiff presents no evidence to the contrary.[16]

Of greater significance, plaintiff does not dispute that Alonso, the decision-maker

---

[15]     Plaintiff's unsupported, personal speculation about the motivations of Bureau personnel is, without more, simply not enough to show pretext. *See Brown v. Small*, 2007 WL 158719, at *6 (D.D.C. Jan. 19, 2007) (holding that speculation about decision-maker's hidden motives is insufficient to counter the defendant's legitimate non-discriminatory reason); *Dancy v. Am. Red Cross*, 972 F. Supp. 1, 3 (D.D.C. 1997) ("The evidence presented in support of this claim, however, consists only of Plaintiff's vague, unsubstantiated allegations and is, therefore, insufficient.").

[16]     Although plaintiff asserts that "[d]efendant has not presented any policy which required Mr. Brent to notify the Office of Security," (Pl.'s Stmt. ¶ 8), defendant has, in fact, provided the deposition testimony of two Bureau employees explaining that it was Bureau practice and policy to report foreign travel by Bureau employees to the Office of Security, (Def.'s Stmt. ¶ 8). Plaintiff's assertions to the contrary, without more, are insufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Anderson,* 477 U.S. at 249-50.

*responsible* for launching the security investigation, acted honestly and reasonably when

he decided to further investigate Asghar. *See George v. Leavitt*, 407 F.3d 405, 415 (D.C.

Cir. 2005) ("[A]n employer's action may be justified by a reasonable belief in the validity

of the reason given even though that reason may turn out to be false."); *see also*

*Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (employer

prevails if it "honestly believes in the reasons it offers"). Indeed, Asghar does not dispute

that Alonso honestly believed Asghar was traveling to Afghanistan because his mother

was ill and that, upon reviewing Asghar's security folder, discovered plaintiff's mother

was already deceased. (Def.'s Stmt. ¶ 11.) Based on this material discrepancy and the

fact that Asghar was traveling to a country in which the United States is engaged in

armed conflict, Alonso decided to further investigate Asghar's travel. (Alonso Dep. at

23-24, 49.) To date, plaintiff has presented no evidence to indicate that Alonso was

unreasonable in his decision to undertake an investigation under these circumstances, or

that he was motivated by anything other than the security interests of the Bureau.

　　　Thus, for all these reasons, plaintiff has presented insufficient evidence for a

reasonable jury to conclude that the security investigation was undertaken for a

discriminatory or retaliatory reason.[17]  Accordingly, defendant's motion for summary

---

[17]　　For the reasons set out above, plaintiff additionally cannot show that the Bureau's legitimate,
non-discriminatory reason for undertaking the security investigation was a pretext for retaliation. Plaintiff
provides no support whatsoever for his assertion that "the reason that the Bureau caused the security
ordeal was because of his past EEO activity." (Compl. ¶ 15.) Additionally, because the security
investigation took place several years after Asghar's previous EEO actions were settled, he is unable to
show any causal connection between his previous complaints and the security investigation, and therefore
cannot establish a *prima facie* case of retaliation. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S.
268, 273 (2001) (20-month period suggests "no causality at all"); *Mayers v. Laborers' Health & Safety of
N.A.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (eight-or-nine months is too long); *see also Ginger v. District of*

judgment is granted on plaintiff's discrimination and retaliation claims.

## II. Hostile Work Environment Claim

Plaintiff additionally alleges that he endured a hostile work environment at the

Bureau. For the following reasons, the Court disagrees and accordingly grants defendant

summary judgment on this claim.

Title VII makes it unlawful for an employer to subject an employee to a hostile

work environment because of the employee's race, color, religion, sex, or national origin.

*See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) ("The phrase 'terms, conditions,

or privileges of employment' [of 42 U.S.C. § 2000e-2(a)(1)] evinces a congressional

intent to strike at the entire spectrum of disparate treatment of men and women in

employment, which includes requiring people to work in a discriminatorily hostile or

abusive environment.") (internal citations and quotation marks omitted). Like discrete

acts of discrimination by employers, in the absence of direct evidence, hostile work

environment claims are analyzed under the *McDonnell Douglas* framework. *See Clipper*

*v. Billington,* 414 F. Supp. 2d 16, 24 (D.D.C. 2006). To establish a *prima facie* case for a

hostile work environment, plaintiff must demonstrate that (1) he is a member of a

protected class; (2) he was subjected to unwelcome harassment; (3) the harassment

occurred because of his race, color, national origin, or religion; (4) the harassment

affected a term, condition, or privilege of his employment; and (5) the employer knew or

should have known of the harassment, but failed to take any action to prevent it. *See*

---

*Columbia,* 477 F. Supp. 2d 41, 53 (D.D.C. 2007); *Gustave-Schmidt v. Chao,* 360 F. Supp. 2d 105, 118-19
(D.D.C. 2004).

*Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 107 (D.D.C. 2005); *see also Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 78 (D.D.C. 2007).

A workplace only becomes "hostile" for purposes of Title VII "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (internal citations and quotation marks omitted). The Supreme Court has made clear that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). To determine whether a workplace is sufficiently hostile to be actionable under Title VII, the Court must "look[] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88 (internal quotation marks and citations omitted). Applying this standard, Asghar fails to establish a *prima facie* case of a hostile work environment based on race, color, national origin, or religion.

Plaintiff's hostile work environment claim is based on two categories of evidence. First, plaintiff relies heavily on the security investigation to support his hostile work environment claim. (*See* Pl.'s Opp'n at 12 ("This is the type of single incident which is sufficiently severe to constitute a hostile work environment.").) As discussed above, the Court has found "no inference of discrimination" with respect to the security investigation. *See Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 164 (D.D.C. 2007).

Simply stated, "the act[] fail[s] to satisfy the requirement that plaintiff show a pervasive, severe and *discriminatory* hostile work environment, because the Court has already found the act[] to be non-discriminatory." *Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003). Accordingly, plaintiff "cannot rely on [the security investigation] as a basis for [his] hostile work environment claim." *Childs-Pierce*, 383 F. Supp. 2d at 79.

As for the second category of evidence, plaintiff relies on a number of separate and intermittent incidents involving Bureau personnel to support his hostile work environment claim, most notably: (1) sometime between 1995 and 1998, co-workers called Asghar "bomb maker, rock thrower and other derogatory names," (Asghar Decl. ¶ 3; *see also* Pl.'s Opp'n at 12); (2) sometime after 2001, "[h]e was . . . mocked as Osama Bin Laden with employees wearing turbans," (Pl.'s Opp'n at 12-13; *see also* Asghar Decl. ¶ 5); (3) sometime in 2002, Jackson told Asghar that Islam was a violent religion, (Pl.'s Opp'n at 12-13; Asghar Decl. ¶ 7); (4) during his absence in 2004, Jackson reported to other Bureau personnel that Asghar could be a terrorist and could bring a bomb into the building, (Pl.'s Opp'n at 12-13; Asghar Decl. ¶ 14); and (5) at some undefined time upon his return to work in late 2004, a co-worker called him "Chemical Ali" and Jackson made an inappropriate comment about the paternity of his unborn child, (Pl.'s Opp'n at 6, 12).

While this alleged conduct is distasteful and inappropriate, plaintiff's allegations simply do not reflect the severe or pervasive conduct required by the Supreme Court to transform "the ordinary tribulations of the workplace" into a legally cognizable hostile

work environment claim. *See Faragher*, 524 U.S. at 788. For instance, plaintiff fails in most instances to even identify the individuals who made the comments or to provide the frequency with which the comments were made. (*See generally* Asghar Decl.) Such sporadic conduct, spread over a period of up to nine years, does not amount to an actionable claim of harassment under Title VII. *See Faragher*, 524 U.S. at 788 ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient); *Bundy v. Jackson*, 641 F.2d 934, 943 n.9 (D.C. Cir. 1981) ("casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action"); *Sewell v. Chao*, 532 F. Supp. 2d 126, 142 (D.D.C. 2008) ("Stray remarks made occasionally over an approximately eight-year period do not come close to making the workplace hostile."). To the contrary, these kinds of allegations "constitute exactly the sort of 'isolated incidents' that the Supreme Court has held *cannot* form the basis for a Title VII violation." *George*, 407 F.3d at 417 (emphasis added). Accordingly, defendant is entitled to summary judgment on plaintiff's hostile work environment claim as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's Motion to Dismiss or, In the Alternative, for Summary Judgment and dismisses the action in its entirety. An appropriate Order consistent with this ruling accompanies this Opinion.

RICHARD J. LEON
United States District Judge

14